UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JENNIFER G. WINGO,<br><br>      Plaintiff,<br><br> v.<br><br>CAROLYN W. COLVIN. Commissioner of Social Security, [1]<br><br>      Defendant. | Case No. 3:12-cv-05582-BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for November 15, 2013 |

  Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

  On June 23, 2008, plaintiff filed an application for SSI benefits, alleging disability as of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly.**

REPORT AND RECOMMENDATION - 1

July 1, 2006, due to a posttraumatic stress disorder, a major depressive disorder, a personality disorder, and hepatitis C. See ECF #3, Administrative Record ("AR") 17, 152. That application was denied upon initial administrative review and on reconsideration. See AR 17. A hearing was held before an administrative law judge ("ALJ") on December 8, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 31-63.

In a decision dated January 6, 2011, the ALJ determined plaintiff to be not disabled. See AR 17-26. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 30, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 416.1481. On July 13, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3. The administrative record was filed with the Court on December 26, 2012. See ECF #9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for further administrative proceedings because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in assessing her residual functional capacity; and (4) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth herein, the undersigned agrees the ALJ erred in evaluating the medical evidence in the record as discussed below – and thus in assessing plaintiff's residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy – and therefore in determining plaintiff to be not disabled. Accordingly, the undersigned recommends that defendant's decision to deny benefits be reversed and that this matter be remanded for further administrative proceedings on that basis.

REPORT AND RECOMMENDATION - 2

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must

REPORT AND RECOMMENDATION - 3

I.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in

---

       scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
       rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.   Dr. Lewis

In terms of the medical evidence in the record in this case, the ALJ found in relevant part:

> . . . [T]he record contains two Department of Social & Health Services
> (DSHS) forms completed by Janis L. Lewis, Ph.D.; however, I did not find the
> limitations proposed in these forms persuasive . . . Ex. 17F; 18F.  The . . .
> initial form was in May 200[9], and the second in April 2010; however, they
> are substantively the same with regard to checked limitations.  In this form,
> Dr. Lewis checked boxes indicating that the claimant experienced numerous
> moderate limitations and one marked limitation regarding the claimant's
> ability to interact appropriately with the public.  I have significantly limited
> the claimant's interaction with the public.  I have not eliminated such
> interaction, as the evidence indicates the claimant is capable of some minimal

REPORT AND RECOMMENDATION - 5

> interaction, as evidenced by her three and a half day bus trip to Texas, for example. As discussed above, I do not find further social limitation is warranted given the medical record.[3] With regard to cognitive limits, I have already limited the claimant to the performance of simple repetitive tasks, this should accommodate the moderate limitations assessed by Dr. Lewis. The record does not substantiate further cognitive limits and Dr. Lewis does not outline specific limits addressing mental capacity function-by-function, as I am required to do under the [Social Security] Regulations. In fact, Dr. Lewis has merely checked boxes indicating mild and moderate limitation, which is not of great assistance substantively. Further, I do not find her notes of exam performance suggestive of any specific limitations either.

AR 24-25. The undersigned agrees the ALJ erred in finding as she did here, but only in part as explained further below.

With regard to the cognitive limitations assessed by Dr. Lewis, the undersigned agrees the ALJ provided insufficient reasons for rejecting the moderate limitation in learning new tasks. See AR 479, 488. This is because the limitation to simple repetitive tasks the ALJ adopted cannot be clearly said to accommodate the moderate limitation in the ability to learn new tasks, since performing simple repetitive tasks and learning new ones do not necessarily encompass the same area of mental functioning. The ALJ also erred in finding no substantive evidentiary support in the record for the limitation on learning new tasks, since the psychological testing Dr. Lewis conducted indicates the existence of significant memory impairments. See AR 491-93. In regard to the social functional limitations Dr. Lewis assessed, the undersigned agrees as well that

---

[3] Earlier in her decision, the ALJ stated:

> . . . I have limited the claimant to simple tasks that involve no more than minimal interaction with the public . . . I did not . . . find limitations regarding interaction with co-workers or adjustment to changes warranted by the record. For example, the claimant presented to a variety of medical clinicians without any reported difficulty. See Ex. 15F; 19F. The claimant also attended group therapy and countess AA/NA meetings without reported incident as well. As such, I do not find that further limitation regarding interaction is supported by the evidence. Limitation regarding changes is similarly unsupported by the record. Counseling notes detail numerous life changes which the claimant weathered without detrimental effect. For example, the claimant changed residences in the middle of the relevant period. Ex. 15F. Thus, I conclude that neither of these additional limitations are warranted given the medical evidence of record.

AR 24.

REPORT AND RECOMMENDATION - 6

the ALJ did not give valid reasons for rejecting the moderate limitations in plaintiff's ability to relate to co-workers and supervisors. See AR 479, 488.  This is because the ability to present for medical appointments and attend therapy sessions does not necessarily correlate with an ability to interact appropriately with co-workers or supervisors in a work setting.[4]

B.  Plaintiff's Global Assessment of Functioning Scores

Also in terms of the medical evidence in the record, the undersigned agrees with plaintiff that the ALJ erred in failing to properly consider the numerous global assessment of functioning ("GAF") scores of 45 to 50 that appear in the record.[5] See AR 214, 224, 270, 470, 472, 583, 586, 588, 591-92, 596-97, 599, 601-02, 604, 606-07, 609-10, 612, 614, 616, 618-19, 621.  Although the ALJ did note the existence of such scores, as plaintiff points out she erroneously stated that they "average 50 or moderate." AR 22.  A GAF score of 41-50, however, "indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be

---

[4] The undersigned finds the other reasons the ALJ stated for rejecting the mental functional limitations assessed by Dr. Lewis in general to lack validity as well.  First, the fact that the functional limitations Dr. Lewis checked in each form she completed are substantially the same is not a legitimate basis to reject them, as it is entirely possible that plaintiff could be limited as found in May 2009, and then continue to remain so in April 2010.  In addition, the ALJ erred in rejecting the mental functional limitations Dr. Lewis assessed on the basis that she did not "outline specific limits addressing mental capacity function-by-function," as the ALJ points to no authority requiring Dr. Lewis to do so, even though that requirement may apply to the ALJ. AR 25.  Nor does the undersigned find the fact that Dr. Lewis checked boxes indicating the existence of moderate functional limitations is in itself necessarily "not of great assistance substantively." Id.  While the Ninth Circuit has expressed its preference for individualized reports over "check-the-box" forms, Dr. Lewis also provided narrative comments concerning her findings and performed both mental status examinations and psychological testing. See AR 477-93; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations supporting depression diagnosis is competent evidence); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for diagnosis of psychiatric disorder, just as results of physical examination provide basis for physical illness or injury diagnosis).

[5] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).

REPORT AND RECOMMENDATION - 7

associated with a serious impairment in occupational functioning."); England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007) (GAF score of 50 reflects serious limitations in general ability to perform basic tasks of daily life). It thus appears the ALJ did not have a proper grasp of the level of impairment indicated by such scores, and therefore inappropriately relied on them to find plaintiff less functionally limited than alleged. Indeed, defendant does not offer any argument in defense of the ALJ's improper consideration thereof.

### C. Dr. Lysak and Dr. Postovoit

The record contains a mental residual functional capacity assessment form completed by William Lysak, Ph.D., in early September 2008, in which he opined that plaintiff had "the ability to perform simple & repetitive tasks and carry out simple instructions," should have "limited contact with coworkers and limited contact with the public" and had "the ability to adjust to mild changes in the workplace." AR 306. That opinion was affirmed by Leslis Postovoit, Ph.D., in mid-November 2008. See AR 363. The ALJ stated she found the opinions of Dr. Lysak and Dr. Postovoit to be "generally persuasive," stating further in relevant part:

> . . . I have limited the claimant to simple tasks that involve no more than minimal interaction with the public, consistent with these opinions. I did not[,] however, find limitations regarding interaction with co-workers or adjustment to changes warranted by the record. For example, the claimant presented to a variety of medical clinicians without any reported difficulty. *See* Ex. 15F; 19F. The claimant also attended group therapy and countess AA/NA meetings without reported incident as well. As such, I do not find that further limitation regarding interaction is supported by the evidence. Limitation regarding changes is similarly unsupported by the record. Counseling notes detail numerous life changes which the claimant weathered without detrimental effect. For example, the claimant changed residences in the middle of the relevant period. Ex. 15F. Thus, I conclude that neither of these additional limitations are warranted given the medical evidence of record.

AR 24. Here too, the undersigned agrees the ALJ erred in rejecting the medical opinion source evidence in the record, but again only in part. Specifically, as with Dr. Lewis, the undersigned

REPORT AND RECOMMENDATION - 8

finds the ALJ erred in rejecting the limitation on interacting with co-workers Drs. Lysak and Postovoit assessed, given that the ability to present for medical appointments and attend therapy sessions does not necessarily correlate with an ability to interact with co-workers.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In terms of plaintiff's mental residual functional capacity, the ALJ found her to be limited

REPORT AND RECOMMENDATION - 9

to performing "**simple repetitive tasks that involve no more than minimal public contact, meaning no more than 10% of the workday**." AR 20 (emphasis in original). Plaintiff argues this mental residual functional capacity assessment is not supported by substantial evidence in the record. The undersigned agrees that in light of the ALJ's failure to provide sufficient reasons for rejecting the medical opinion source evidence discussed above – as well as the ALJ's failure to properly consider the numerous GAF scores in the record – it cannot be said at this time that the ALJ's RFC assessment is completely accurate.

III.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

REPORT AND RECOMMENDATION - 10

substantially the same limitations as were included in the ALJ's assessment of plaintiff's mental residual functional capacity. See AR 54.  In response to that question, the vocational expert testified that an individual with those limitations would be able to perform other jobs. See AR 55.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 25-26.  But because the ALJ erred in evaluating the medical evidence and thus in assessing the residual functional capacity that she did as discussed above, the undersigned agrees with plaintiff that it also cannot be said at this time that the ALJ's step five findings, and therefore her non-disability determination, are supported by substantial evidence.

IV.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the

REPORT AND RECOMMENDATION - 11

record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental functional capabilities, mental residual functional capacity and ability to perform other jobs existing in significant numbers in the national economy, remand for further administrative proceedings is warranted in this case.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See</u> also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 15, 2013**, as noted in the caption.

DATED this 29th day of October, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12